**James C. BROCK, Plaintiff,**

v.

**CARRION, LTD., et al., Defendants.**

**No. CIV. S–02–2762 FCD PAN.**

United States District Court,
E.D. California.

Aug. 3, 2004.

---

John T. Stralen, Law Offices of John T. Stralen, Sacramento, CA, for Plaintiff.

Wendy K. Genz, Altman Hambleton & Lunche, Encino, CA, for Defendants.

## MEMORANDUM AND ORDER

DAMRELL, District Judge.

Plaintiff James C. Brock ("Brock") brings this action against defendants Carrion, Ltd. ("Carrion") and Michael Shannon Fitzgerald (collectively, "defendants"), claiming violations of the Fair Labor Standards Act (29 U.S.C. § 201, *et seq.*), the California Labor Code, and California Business and Professional Code § 17200, *et seq.* Specifically, plaintiff seeks damages, in the form of allegedly unpaid minimum wages and overtime wages, for his work as a resident apartment manager at defendants' apartment complex.

This matter comes before the court on cross-motions for summary adjudication by plaintiff and defendants.[1] All parties seek

---

1. Because oral argument will not be of mate- rial assistance, the court orders these matters

resolution of a single issue: whether defendants are legally entitled to claim an offset or credit, against wages potentially owed to plaintiff, for all or part of the value of the apartment in which plaintiff resided during his employment as apartment manager.

For the reasons discussed below, plaintiff's motion for summary adjudication is GRANTED, and defendants' motion is accordingly DENIED.

## FACTUAL BACKGROUND [2]

Defendant Carrion was, at all relevant times, an owner and/or manager of several apartment complexes in Northern California. (Defs.' Reply to Pl.'s Resp. to Defs.' Stmt. of Uncontroverted Facts ("Defs.' Reply SUF"), filed July 23, 2004, No. 1.) For approximately two years, plaintiff worked for defendants as a resident apartment manager of a 22–unit apartment complex called Sunrise Village Apartments ("Sunrise Village"). (Id. No. 2; Defs.' Opp. to Pl.'s Stmt. of Undisputed Material Facts ("UMF"), filed July 16, 2004, No. 1.) Defendants, who were plaintiff's employers for purposes of the Fair Labor Standards Act ("FLSA") and California labor laws, employed plaintiff from November or December of 1999, until November of 2001. (UMF Nos. 1 & 2.) During this time period, plaintiff served as the complex's live-in, on-site emergency contact person, a position that defendants were legally required to fill. (UMF Nos. 4 & 5.)

On January 11, 2000, plaintiff entered into a written employment contract with defendants. (Defs.' Reply SUF No. 3; UMF No. 6.) Under the terms of the Resident Apartment Manager Employment Agreement ("Employment Agreement"), defendants agreed to pay plaintiff $550.00 per month for his duties as apartment manager, and plaintiff agreed to pay defendants $550.00 per month as rent for an on-site apartment. (UMF Nos. 7 & 9.) Specifically, the Employment Agreement states: "The rent on the apartment shall be $550.00 per month payable on the 1st day of each month in cash or check." (UMF No. 17.) Defendants provided the apartment to plaintiff as a condition of his employment. (UMF No. 10.) The Employment Agreement does not specifically state that the apartment was being credited toward defendants' minimum wage obligation to plaintiff. (UMF No. 8.)

Plaintiff's apartment contained three bedrooms and also served as the apartment manager's office. (Dep. of James C. Brock, Ex. K to Pl.'s P. & A. in Supp. of Opp'n to Defs.' Mot. For Partial Summ. J., filed July 16, 2004, 17; UMF No. 11.) The parties dispute the fair rental value of a three-bedroom apartment at Sunrise Village. Defendants contend that three-bedroom apartments "were rented for $1,095.00 throughout Plaintiff's employment," while plaintiff argues that such units actually rented for less and that defendants merely "hoped and tried to rent them for $1,095.00." (Defs.' Reply SUF No. 11.). Evidence submitted by defendants demonstrates that several apartments were, in fact, rented for $1,095.00, although it is not possible to determine whether *all* three-bedroom apartments at the complex were rented at this rate. (*See* Ex. B to Defs.' Mem. of P & A in Supp. of its Opp. to Pl.'s Mot. For Summ. Adjudication ("Defs.' Opp."), filed July 16, 2004.)

Under the Employment Agreement, plaintiff's duties as apartment manager included, but were not limited to, "showing vacancies, completing resident applications, collecting rent, keeping reports on rents, preparing late notices, enforcing rules, bookkeeping, cleaning apartments

---

submitted on the briefs. E.D. Cal. Local Rule 78–230(h).

**2.** Unless otherwise noted, the facts recited herein are undisputed.

and entrances, policing the premises, maintaining the property, cleaning up trash ... and other similar and related job duties." (UMF No. 14.) Defendants also required plaintiff to carry a cell phone with him whenever he left the complex premises, so that he could be contacted at any time regarding apartment matters. (UMF No. 13.) Occasionally, plaintiff performed tasks considered outside the scope of his managerial duties, for which defendants paid him $15.00 per hour. (UMF No. 18.)

Plaintiff did not receive any compensation for completing his regular managerial tasks; he was simply not asked to pay for the apartment in which he resided. (UMF No. 19.) In fact, defendant never paid plaintiff the $550.00 per month income stipulated in the Employment Agreement, nor did plaintiff ever pay defendant the $550.00 per month as rent for his apartment. (UMF Nos. 15 & 16.) In addition, defendants have "never ... provided [plaintiff] with a 'pay check stub' or any other documentation showing his compensation, and any deductions therefrom, etc[.], for his work as the apartment manager." (UMF No. 20.) Defendants only provided plaintiff with "pay check stubs" for his $15.00/hr work above and beyond his managerial responsibilities. (UMF No. 21.) Defendants do not possess any time cards or other materials recording plaintiff's hours worked, compensation, and deductions, for his apartment manager duties. (UMF No. 22.) Defendants have not produced, nor do they have in their possession, any documents demonstrating the actual cost of furnishing the apartment to plaintiff. (UMF No. 24.; Defs.' Reply Add'l. UMF No. 30.)

## STANDARD

Rule 56 allows a court to grant summary adjudication on part of a claim or defense. See Fed.R.Civ.P. 56(a) ("A party seeking to recover upon a claim ... may ... move ... for a summary judgment in the party's favor upon all or any part thereof."); see also Allstate Ins. Co. v. Madan, 889 F.Supp. 374, 378–79 (C.D.Cal.1995). The standard applied to a motion for summary adjudication is the same as that applied to a motion for summary judgment. See Fed.R.Civ.P. 56(a), (c); Mora v. Chem-Tronics, Inc., 16 F.Supp.2d 1192, 1200 (S.D.Cal.1998). Thus, summary adjudication is appropriate when the moving party demonstrates that there exists no genuine issue as to any material fact, entitling it to a ruling in its favor as a matter of law. See Fed.R.Civ.P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

When parties submit cross-motions for summary judgment, the court must review the evidence submitted in support of each cross-motion and consider each party's motion on its own merits. Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001). The court must examine each set of evidence in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288–

289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). Genuine factual issues must exist that "can be resolved only by a finder of fact, because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The evidence presented by the parties must be admissible. Fed.R.Civ.P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49, 57 (2d Cir.1985); *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979).

## ANALYSIS

The specific issue on this summary adjudication motion is whether defendants are entitled, as a matter of law, to offset all or part of the value of plaintiff's Sunrise Village apartment against any back wages they may potentially owe to plaintiff.

Defendants contend that they may claim such an offset under both federal and state law. In that regard, they observe that the federal FLSA defines wages to include "the reasonable cost ... to the employer of furnishing [an] employee with board, lodging, or other facilities...." 29 U.S.C. § 203(m) (1998). Thus, argue defendants, if an employer may deduct apartment value from an employee's potential wages, an employee (like plaintiff) should not be allowed to recoup that value in a suit for back wages. In addition, defendants argue that California Labor Code section 1182.8 authorizes an offset, as it permits employers to charge resident apartment managers up to two-thirds of the apartment's fair rental value. Cal. Lab.Code § 1182.8 (West 2003). Defendants assert that they have complied with the charging requirements and, thus, may claim a credit under this section.

Plaintiff contends that defendants are not entitled to an offset under federal or state law. Specifically, plaintiff asserts that defendants have failed to meet the record-keeping requirements mandated by the FLSA and the Code of Federal Regulations, thus preventing defendants from seeking a credit for the lodging provided. 29 C.F.R. § 516.27(a) & (b) (2004). Additionally, plaintiff argues that California Industrial Welfare Commission Order No. 5 ("Wage Order No. 5") and California Labor Code section 1182.8 preclude defendants from claiming an offset under state law, because these provisions strictly limit employers' ability to credit apartment value to meet their minimum wage obligations to apartment managers. Cal. Lab. Code § 1182.8; Indus. Welfare Comm'n Order No. 5–2001 Regulating Wages, Hours and Working Conditions in the Public Housekeeping Industry, Cal.Code Regs., tit. 8, § 11050 (2001).

### A. Federal Law

Under the FLSA, " 'Wage' paid to any employee includes the reasonable cost ... to the employer of furnishing such employee with board, lodging, or other facilities." 29 U.S.C. § 203(m). Thus, in computing back wages due an employee under the FLSA, an employer is entitled to subtract the reasonable costs of providing lodging (as a "credit" against wages owed).[3] *Don-*

---

**3.** Under the Code of Federal Regulations, additional restrictions limit an employer's entitlement to a credit. The employer may claim

*ovan v. New Floridian Hotel, Inc.,* 676 F.2d 468, 473–74 (11th Cir.1982). The Code of Federal Regulations defines "reasonable cost" as: "not more than the actual cost to the employer of the board, lodging, or other facilities." 29 C.F.R. § 531.3(a) (2004). Where actual costs exceed the fair rental value of the lodging, the fair rental value will be used as the reasonable cost. *Id.* § 531.3(c). "Reasonable cost does not include a profit to the employer or to any affiliated person." *Id.* § 531.3(b).

Defendants assert that, because they rented other three-bedroom apartments for $1,095.00 during plaintiff's employment, the $550.00 charged to plaintiff was clearly below the "fair market value," thus entitling defendants to a credit of at least $550.00 against plaintiff's wages. This argument is misplaced. Defendants improperly assume that the measure for reasonable cost in this case is the apartment's fair market value. As indicated above, fair rental value may be used to establish reasonable cost *only if* it is *less than actual cost.* Thus, the fair rental value figure could only apply if defendants rented out their apartments at a higher rate than the actual costs of maintaining such residences. Even if defendants did engage in this highly unprofitable practice, it is still necessary to establish defendants' *actual costs* of furnishing lodging, in order to conduct an appropriate comparison for determining reasonable cost.

The few federal circuits that have addressed this issue place the burden of proving reasonable cost on the *employer. Donovan v. Williams Chemical Co.,* 682 F.2d 185, 190 (8th Cir.1982); *New Floridian,* 676 F.2d at 474 (11th Cir.1982). This is confirmed by the Code of Federal Regulations, which imposes certain record-keeping requirements upon employers who seek to offset lodging costs against employees' wages. Section 516.27 provides that: "[A]n employer who makes deductions from the wages of employees for 'board, lodging, or other facilities' ... shall maintain and preserve records substantiating the cost of furnishing each class of facility." 29 C.F.R. § 516.27(a). This can include the cost of utilities, repairs and/or maintenance. *Id.* Moreover,

> [i]f additions to or deductions from wages (1) so affect the total case wages due in any workweek ... as to result in the employee receiving less in cash than the applicable minimum wage ... the employer shall maintain records showing on a workweek basis those additions to or deductions from wages.

*Id.* § 516.27(b). Additionally, employers must segregate permissible deductions from impermissible ones. *Brennan v. Veterans Cleaning Service, Inc.,* 482 F.2d 1362, 1370 (5th Cir.1973). Thus, where an

a credit only if the lodging provided (1) is "customarily furnished" by the employer or other employers in the same or similar trade, (2) is accepted voluntarily by the employee, and (3) is furnished primarily to benefit the employee, rather than the employer. 29 C.F.R. §§ 531.3 & 531.30 (2004).

It is not disputed that defendants—and apartment owners in general—"customarily furnish" lodging for apartment managers. In addition, despite plaintiff's suggestion that he did not accept the lodging voluntarily, plaintiff does not actually assert that he was coerced. (Pl.'s Opp. to Defs.' Mot. for Partial Summ. J. ("Pl.'s Opp."), filed July 16, 2004, at 3:21–27; UMF No. 7.) Moreover, plaintiff's signature on the Employment Agreement provides sufficient evidence that he accepted the residence voluntarily. *See Donovan v. Miller Properties, Inc.,* 547 F.Supp. 785, 789 (D.C.La. 1982), *aff'd by* 711 F.2d 49 (5th Cir.1983). However, plaintiff argues that the third requirement—that the lodging be provided primarily for the employee's benefit—has not been met in this case. (Pl.'s Opp., at 3: 8–27.) Because the court holds that defendants are legally precluded from claiming an offset under other federal provisions, it does not reach this issue.

employer produces only evidence of costs including profit, the employer has the burden of determining the *actual* cost that may be deducted from that amount. *New Floridian,* 676 F.2d at 475.

An employer must demonstrate compliance with the above provisions in order to be entitled to a credit for the reasonable cost of providing lodging to employees. *New Floridian,* 676 F.2d at 474. "An employer's unsubstantiated estimate of his cost, where the employer has failed to comply with the recordkeeping provisions of the FLSA, and where there has been no determination of reasonable cost by the Wage and Hour Division, does not satisfy the employer's burden of proving reasonable cost." *Id.* at 475. Courts routinely deny employers offsets under the FLSA for failure to keep adequate records. *See, e.g., Williams Chemical,* 682 F.2d 185 (8th Cir.1982); *Marshall v. Debord,* 1978 WL 1705 (E.D.Okla.), 84 Lab. Cas. ¶ 33,721; *Cuevas v. Bill Tsagalis, Inc.,* 149 Ill. App.3d 977, 102 Ill.Dec. 946, 500 N.E.2d 1047 (1986).

 In the present case, defendants essentially "deducted" the $550.00 rental value from plaintiff's wages, despite the fact that no money ever changed hands. Moreover, such "deductions" clearly resulted in plaintiff receiving less each week than minimum wage (he actually received $0.00 in gross pay). Thus, defendants are bound by the record-keeping requirements of the FLSA.

Defendants argue that, under 29 C.F.R. § 516.27(c), they are not subject to the FLSA's record-keeping requirements. This section states:

> The records specified in this section are not required with respect to an employee in any workweek in which the employee is not subject to the overtime provisions of the Act *and* receives not less than the applicable statutory minimum wage in cash for all hours worked in that workweek.

29 C.F.R. § 516.27(c) (emphasis added). Defendants contend that "unless and until Plaintiff can establish his right to overtime pay, the issue of record keeping does not affect Defendants [sic] entitlement to a credit." (Defs.' Reply, filed July 23, 2004, at 2:24–25.) This is a misreading of the statute's requirements.

Section 516.27(c) exempts employers from the record-keeping requirements only if *two* conditions are met: (1) the employee is not subject to the Act's overtime provisions, *and* (2) the employee receives *at least* the applicable minimum wage *in cash* for all hours worked. § 516.27(c). Thus, defendants cannot simply assert that they are exempt because plaintiff has failed to establish his entitlement to overtime wages. Defendants must *also* demonstrate that they paid plaintiff at least minimum wages, in cash. This, however, they cannot do. The undisputed facts show that defendants did not pay plaintiff *any* cash wages. (UMF Nos. 15, 16 & 19.) Therefore, because one of the two requirements is clearly not met, defendants are subject to the FLSA's record-keeping requirements.

 It is undisputed that defendants have not produced any pay stubs, time cards, cancelled paychecks, or other documentation showing costs deducted from plaintiff's compensation. (UMF Nos. 20 & 22.) It is further undisputed that defendants have failed to produce documentation demonstrating the actual cost of providing plaintiff with lodging at Sunrise Village. (UMF No. 24.) Finally, defendants concede that they do not have such documentation in their possession.[4]

---

4. Defendants have previously asserted their possession of certain utility bills. (*See* Pl.'s Mot. in Limite No. One, filed June 1, 2004, at 3:1–4.) However, they have not submitted any such bills on the present motion.

(Defs.' Reply Add'l. UMF No. 30.) In fact, defendants have produced no evidence suggesting their reasonable costs except: (1) the $1,095.00 "fair rental value" figure, and (2) the $550.00 rent figure set forth in the Employment Agreement. The first undoubtedly includes profit to the defendants (as prohibited by 29 C.F.R. § 531.3), and defendants have made no attempt to segregate such profits from the actual cost of furnishing such lodging (as required by federal case law). *Brennan,* 482 F.2d at 1370. The second is, at best, merely an "unsubstantiated estimate" of defendants' costs, in the absence of physical records indicating otherwise. *New Floridian,* 676 F.2d at 475. Defendants have not demonstrated the actual costs of providing plaintiff's apartment. Thus, as a matter of federal law, defendants have failed to meet their burden of establishing reasonable costs and are not entitled to an offset against plaintiff's potential damages.

Defendants argue that the court should presume reasonable cost to be $550.00, because it is the amount stipulated in the Employment Agreement. In support, defendants cite a single sentence from *Williams Chemical,* which references the Eighth Circuit's decision in *Marshall v. Truman Arnold Distributing Company, Inc..* See *Williams Chemical,* 682 F.2d at 190. In *Truman Arnold,* the court held that, where an employment contract specified a certain value for lodging, it was not clearly erroneous for the trial court to rely upon this contractual value as establishing reasonable costs for credit-entitlement purposes. *Marshall v. Truman Arnold Distrib. Co.,* 640 F.2d 906, 909 (8th Cir. 1981).

Defendants' argument is unavailing for several reasons. First, an absence of clear error does not indicate an absence of *any* error, nor does it equate to the presence of a binding legal standard. Although the Eighth Circuit determined that the trial court's decision was not clearly erroneous, it did *not* establish that contractual rental figures are legally controlling in demonstrating reasonable cost. Second, the *Marshall* court's reasoning apparently relied upon the district court's finding that "the Secretary [of Labor] was not able to present sufficient evidence that the true value of the quarters was other than 'the agreed price of $300.00 per month.'" This apparently places the burden of establishing reasonable cost upon the Secretary— rather than upon the employer—in violation of the subsequent precedent that the court must consider herein. In addition, the court agrees with plaintiff that public policy and statutory interpretation argue against treating contractual values as binding. Such a determination would greatly undermine the regulations' emphasis upon establishing actual costs and substantiating those costs with actual records. Allowing employers to claim offsets based simply upon a contractual rental value would likely permit the inclusion of profit, thus directly contradicting the statutory language.

Here, it is undisputed that the Employment Agreement does not specify the *value* of the apartment; rather it merely establishes the amount of *rent* to be "paid" by plaintiff for such lodging. (UMF No. 17.) Defendants have failed to demonstrate that the $550.00 contract value is representative of their actual costs, or that their actual costs exceeded the fair rental value of the apartment. Therefore, defendants have not satisfied their burden, and federal law precludes them from obtaining an offset against potential back wages owed to plaintiff.

## B. State Law

In determining whether defendants are entitled to an offset under state law, it is

necessary to examine the interaction between the two relevant statutes: (1) California Labor Code section 1182.8, and (2) Wage Order No. 5.

### 1. Interpreting California Labor Code Section 1182.8 and Wage Order No. 5:

California Labor Code section 1182.8 provides that:

> No employer shall be in violation of any provision of any applicable order of the Industrial Welfare Commission relating to credit or charges for lodging for charging, pursuant to a voluntary written agreement, a resident apartment manager up to two-thirds of the fair market rental value of the apartment supplied to the manager, if no credit for the apartment is used to meet the employer's minimum wage obligation to the manager.

Cal. Lab.Code § 1182.8 (West 2003). Thus, under this section, an employer may charge a resident apartment manager up to two-thirds of the apartment's fair rental value, provided that: (1) there is a voluntary written agreement, and (2) no credit for the apartment's value is used to meet the employer's minimum wage obligations. *Id.*

Wage Order No. 5, promulgated by the Industrial Welfare Commission to govern the public housekeeping industry, states that:

> Meals or lodging may not be credited against the minimum wage without a voluntary written agreement between the employer and the employee. When credit for meals or lodging is used to meet part of the employer's minimum wage obligation, the amounts so credited may not be more than ... two-thirds (2/3) of the ordinary [apartment] rental value, and in no event more than:

$324.70 per month (effective March 1, 1998 through January 1, 2001), and $352.95 per month (effective January 1, 2001 through January 1, 2002). Cal.Code Regs., tit. 8, § 11050, subdiv. 10(C) (2001). In addition, Wage Order No. 5 prohibits an employer from charging rent in excess of the above values, where the apartment is provided as a condition of employment. *Id.* subdiv. 10(E).

Given the paucity of case law discussing Labor Code section 1182.8, this statute must be read alongside Wage Order No. 5 to provide a useful interpretation. In fact, section 1182.8 explicitly references "any applicable order of the Industrial Welfare Commission relating to credit or charges for lodging," thus indicating that the two regulations are meant to be read (and applied) in conjunction with one another. Cal. Lab.Code § 1182.8.

The clear legislative purpose behind both section 1182.8 and Wage Order No. 5 is to prevent employers from circumventing the state's minimum wage requirements. In furthering this goal, each provision places strict limits on an employer's ability to credit lodging against the minimum wage. Section 1182.8 authorizes certain rental charges, provided that "*no credit* for the apartment is used to meet the employer's minimum wage obligation." Cal. Lab.Code § 1182.8 (emphasis added). Wage Order No. 5 specifies the extremely narrow circumstances in which an employer may credit lodging against minimum wage requirements. Therefore, section 1182.8 governs where an employer does *not* credit lodging against minimum wages, and Wage Order No. 5 applies when an employer *does* seek to impose such a credit.

Given this interpretation, the court must first determine whether defendants' payment arrangement effectively "credited" the cost of lodging against plaintiff's minimum wages. If defendants did not use such a credit, they were authorized to charge plaintiff up to two-thirds of the

apartment's fair market value, and Wage Order No. 5 need not be consulted. If, however, defendants did use a credit to meet their minimum wage obligations, the court must look to Wage Order No. 5 to assess defendants' compliance with its crediting requirements.

## 2. Application of California Labor Code Section 1182.8 to Facts of this Case

■ Plaintiff contends that defendants applied the $550.00 rental charge as a "credit" against minimum wages owed to plaintiff. Specifically, plaintiff argues that defendants violated section 1182.8 and may not claim an offset against plaintiff's potential damages in the present suit. As detailed below, the court agrees with plaintiff that defendants used the rental value as a credit against plaintiff's minimum wages. However, under the facts here, rather than violating section 1182.8, defendants are simply not subject to it. Instead, defendants are bound by the crediting requirements of Wage Order No. 5.

In the absence of case precedent, the court must examine secondary sources for an interpretation of the term "credit," as it is used in section 1182.8. California's Department of Labor Standards Enforcement ("DLSE"), an agency charged with enforcing the state's labor laws, promulgates an Enforcement Policy and Interpretations Manual to provide legal practitioners with general rules for applying and interpreting labor provisions. The DLSE's Manual interprets section 1182.8 to mean "that the manager must be paid at least the minimum wage for all of the hours worked and none of the apartment value may be credited toward that minimum wage obligation." 2002 Update of the DLSE Enforcement Policies and Interpretations Manual § 45.4.7.1, at http://www.dir.ca.gov/dlse/DLSEManual/dlse_enfcmanual.pdf. Thus, as noted by the Wage and Hour Manual for California

Employers, the DLSE "construes Section 1182.8 to require an employer to pay resident managers gross wages at least equal to the minimum wage after the apartment charges imposed by the employer are taken into consideration." Richard J. Simmons, Wage and Hour Manual for California Employers § 6.8(c) (9th ed.2003).

Defendants argue that the DLSE's interpretation of section 1182.8 is invalid in light of recent California Supreme Court precedent holding that DLSE policies are void regulations under the Administrative Procedure Act ("APA"). *Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal.4th 557, 561, 59 Cal.Rptr.2d 186, 927 P.2d 296 (1996). In *Tidewater*, the California Supreme Court concluded that DLSE policies intended as general rules or interpretations of law are void, because they are not passed in accordance with the APA's strict requirements for administrative regulations. *Id.* at 576, 59 Cal.Rptr.2d 186, 927 P.2d 296. However, later decisions have held that courts may look to DLSE policies for direction and assistance, even if such policies do not retain the force of law. *See Morillion v. Royal Packing*, 22 Cal.4th 575, 590, 94 Cal.Rptr.2d 3, 995 P.2d 139 (2000) ("Long-standing, consistent administrative construction of a statute by those charged with its administration ... is entitled to great weight and should not be disturbed unless clearly erroneous."); *Bell v. Farmers Ins.*, 87 Cal.App.4th 805, 815, 105 Cal.Rptr.2d 59 (2001) ("Advisory opinions ... 'while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.' "). Consistent with this authority, the court will consult the DLSE Manual for guidance in interpreting section 1182.8. Additionally, the court considers the plain language and meaning of the statute.

Under the DLSE's interpretation and the plain meaning of section 1182.8, defendants used plaintiff's apartment as a credit. By charging plaintiff the same amount in rent as plaintiff was to be paid each month under the contract, defendants effectively "credited" lodging against minimum wages—indeed, against any and *all* wages. This conclusion is bolstered by the fact that no money was ever paid to plaintiff. Defendants did not expect plaintiff to pay his rent, because they treated the payment as a credit that was "already deducted" "on the books." (Brock Dep., Ex. B to Decl. Of John T. Stralen in Supp. Of Pl.'s Mot. For Summ. Adjudication, filed July 2, 2004, at 89:8–25.) It is undisputed that plaintiff received absolutely no monetary compensation for his managerial work at Sunrise Village. (UMF Nos. 15, 16 & 19.) Thus, after apartment charges are taken into consideration, plaintiff was *not* paid at least gross minimum wages for all hours worked. Defendants, therefore, are subject to the strict crediting provisions of Wage Order No. 5.[5]

### 3. Application of Wage Order No. 5 to Facts of this Case

Plaintiff argues that California's Wage Order No. 5 bars defendants from claiming an offset under state law. Defendants do not challenge this argument and, in fact, explicitly state that "Defendants are not seeking a credit pursuant to Wage Order No. 5." (Defs.' Opp., at 2: 26–27.) This is understandable, as the Order clearly precludes an offset on the facts of this case.

As employers in the public housekeeping industry, defendants were subject to the regulations of Wage Order No. 5 throughout the relevant time period. Cal.Code Regs., tit. 8, § 11050, subdiv. 1. As such, their actions were governed by state provisions setting minimum wages at $5.75 per hour between March 1, 1998 and January 1, 2001, and at $6.25 per hour between January 1, 2001 and January 1, 2002. *Id.* subdiv. 4(A); Cal.Code Regs., tit. 8, § 11050, subdiv. 4(A) (2000).

As discussed above, defendants credited lodging costs against plaintiff's minimum wages. Although Wage Order No. 5 permits such credits in certain circumstances, the amount that defendants credited ($550.00 per month) exceeded the permissible values ($324.70 per month from 1999–2000, and $352.95 per month from 2000–2001). Moreover, defendants have failed to establish that plaintiff entered into an appropriate "voluntary written agreement." Consistent with the statutory language, the DLSE requires that the written agreement "explicitly reference that such credits are being applied toward the minimum wage obligation of the employer."[6] 2002 Update of the DLSE Enforcement Policies and Interpretations Manual, at § 45.4.5. Defendants concede this interpretation in their brief, by noting that Wage

5. Plaintiff submits evidence that Virginia Hess, plaintiff's mother, also worked for defendants as an apartment manager during much of the relevant time period. (Defs.' Reply SUF—Defs.' Resp. to Pl.'s Additional UMF ("Defs.' Reply Add'l. UMF"), No. 26.) Ms. Hess lived with plaintiff in the same apartment and signed an Employment Agreement that was identical to plaintiff's contract. (Defs.' Reply Add'l. UMF Nos. 27 & 28.) In light of these facts, plaintiff argues that defendants failed to comply with the charging requirements of section 1182.8. However, because the court finds that Wage Order No. 5 (rather than section 1182.8) applies to defendants in this case, the court makes no findings on whether plaintiff's mother's Employment Agreement resulted in charges exceeding two-thirds the fair market value for the three-bedroom apartment. (*See* Pl.'s Reply Brief, filed July 23, 2004, at 2:25–3:2.)

6. As detailed above, the court regards the DLSE's interpretations as useful guidance, despite their apparent lack of legal authority under *Tidewater*. *Bell v. Farmers Ins.*, 87 Cal.App.4th 805, 815, 105 Cal.Rptr.2d 59 (2001).

Order No. 5 requires "a voluntary written agreement *to credit lodging toward minimum wage obligations.*" (Defs.' Opp., at 2:9–10 (emphasis added).) The sole agreement referenced by defendants is the Employment Agreement, which does not state that rent would be credited against minimum wages. (UMF No. 8.) Thus, defendants cannot obtain an offset against plaintiff's potential damages under subdivision 10(C) of Wage Order No. 5.[7]

Because defendants violated Wage Order No. 5 by improperly crediting the apartment's value against minimum wages, state law precludes defendants from claiming an offset to recoup this value from plaintiff's potential damages.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary adjudication regarding defendants' entitlement to an offset/credit is GRANTED; defendants' motion for summary adjudication regarding the same is accordingly DENIED.

IT IS SO ORDERED.

7. Subdivision 10(E) is equally unavailing. As noted above, defendants clearly violated this provision by charging over $324.70 per month (from 1999–2000) and over $352.95 per month (from 2000–2001).