Filed 6/26/14

## CERTIFIED FOR PUBLICATION

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| BRENDA LEIGH VON NOTHDURFT,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>JOHN STECK et al.,<br><br>    Defendants and Respondents. | F066608<br><br>(Super. Ct. No. 12 CECG 01394)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County. Carlos A. Cabrera, Judge.

Law Offices of Kenneth F. Moss and Kenneth F. Moss for Plaintiff and Appellant.

Gilmore, Wood, Vinnard & Magness, Daniel W. Rowley for Defendants and Respondents.

-ooOoo-

John Steck hired Brenda Leigh Von Nothdurft to work as a resident manager at an apartment complex he owned. The two of them signed a management agreement which provided that Von Nothdurft would be compensated by, among other things, "[f]ree rent of a three bedroom apartment during the term as manager." Believing she had not been adequately compensated, she sought to recover wages for all of her work without deduction for her free apartment.

Von Nothdurft can't have it both ways.  We conclude the parties' agreement satisfies the requirements of the applicable wage order to allow Steck to take a rental credit against Von Nothdurft's wages, so we affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

Steck, a retired engineer living in San  Jose, California, owns an apartment building in Clovis.  In 2009, he needed to hire a manager for the apartments, so he placed an ad on Craig's List.  Von Nothdurft responded to the ad; at the time, she was a resident of the apartments, renting a three bedroom unit for $955 per month.

Steck decided to hire Von Nothdurft, effective October 1, 2009.  Steck presented Von Nothdurft with a written agreement which provided that she would be compensated for her services as manager by "(1) free rent for her apartment, (2) $100 per month toward utility expenses, (3) one telephone line, and (4) an Internet high speed connection."  At that time, neither party was aware of the requirements of Wage Order No. 5-2001.  When Steck presented the agreement, entitled "Residential Rental Property Management Agreement," to Von Nothdurft, he told her it was the written agreement for her job, and asked her to review it and let him know if there were any changes she would like to make.  Von Nothdurft did not suggest any changes.

Von Nothdurft testified at trial that she felt she had no alternative but to accept the terms offered in order to get the job.  Early in her employment, Steck gave her a copy of a book entitled "California Landlord's Law Book[,]" which she had used as a reference but had not read cover to cover.   Steck testified at trial that he acquired the apartment building in 1992 as a retirement investment.  He had used essentially the same management agreement with other persons he had hired previously to manage the apartments and never had any problems or complaints until this case.  Steck acknowledged that he was aware he had to pay his employees minimum wage.

In April 2010, Von Nothdurft filed a complaint against Steck with the California Labor Commissioner, alleging Steck had not adequately compensated her pursuant to

2.

California labor law, specifically Wage Order No. 5, which requires payment of a minimum wage of $8 per hour. Von Nothdurft also sought liquidated damages and penalties. Following a hearing, the Labor Commissioner found, among other things, that Steck was entitled to a credit of $451.89 per month for the free apartment provided Von Nothdurft, pursuant to the maximum allowed by the wage order against the wages owed Von Nothdurft.

At the conclusion of the Labor Commissioner proceedings, the parties settled Von Nothdurft's claims with the exception of whether Steck was entitled to a credit against his minimum wage obligations for the free rent given Von Nothdurft during her employment.

Von Nothdurft appealed the Labor Commissioner's decision to Fresno County Superior Court, where a trial de novo was held. Before evidence was presented, the parties stipulated that Von Nothdurft had worked 2,496 hours for Steck between October 1, 2009 and December 31, 2011, and that all issues regarding wages, bonuses, and utility expenses had been settled and fully paid by Steck before trial.

After testimony was received and closing arguments made, the court took the case under submission. The court subsequently issued a written decision, in which it explained the issue before it – whether Steck was entitled to take a credit for the rent free apartment provided Von Nothdurft against the wages owed her – turned on whether the hiring agreement the parties signed meets the definition of a "voluntary written agreement" as set forth in Section 10 of the Wage Order. The court found that while the parties were unaware of the statutory minimum wage requirements when the agreement was signed, "it is clear that both parties intended that the waiver of rent for the apartment was to be compensation for [Von Nothdurft]'s work. Both parties signed the agreement voluntarily without coercion and [Von Nothdurft] did receive use of the apartment rent free, for the time in question. It is this Court's opinion that the signed agreement does meet the definition of the Wage Order and, therefore, [Steck] is entitled to the allowed credit for the benefit conferred upon [Von Nothdurft]."

3.

## DISCUSSION

The sole issue before us, as set forth in the settled statement, is: "Does the written agreement between the parties satisfy the requirements of Wage Order [No.] 5-2001 (as amended)[,] Paragraph 10, sufficiently to permit Defendant/Respondent Steck to take a credit of $451.89 per month against Plaintiff/Appellant Von No[]thdurft's right to receive minimum wage?"

The resolution of this issue turns on the interpretation of Industrial Welfare Commission (IWC) wage order No. 5-2001 (Cal. Code Regs., tit. 8, § 11050), commonly known as Wage Order 5. Wage Order 5 contains rules governing how resident managers of apartment houses and motels must be paid, including the circumstances under which an employer may credit lodging toward a resident manager's pay. (*Brewer v. Patel* (1993) 20 Cal.App.4th 1017, 1020 [explaining Wage Order No. 5-89, a prior version of Wage Order No. 5-2001] (*Brewer*).) As explained in *Brewer*, Wage Order 5 "first states that compensation must be paid for 'the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work . . . .' This language describes the general principle applicable in all hourly employment contexts and means that an employee must be paid for the time he is at work. [¶] [The wage order] then mandates a special rule for apartment managers and motel clerks who are obligated to reside on the work premises. In that situation, only 'that time spent carrying out assigned duties shall be counted as hours worked.'" (*Brewer*, *supra*, 20 Cal.App.4th at p. 1021.) Thus, a resident apartment manager must be compensated only for work the manager actually provides. (*Ibid.*)

Wage Order 5 also provides, as applicable here: ". . . lodging may not be credited against the minimum wage without a voluntary written agreement between the employer and the employee. When credit for . . . lodging is used to meet part of the employer's minimum wage obligation, the amounts so credited may not be more than . . . two-thirds (2/3) of the ordinary [apartment] rental value, and in no event more than . . . $451.89 per

4.

month [effective January 1, 2008]." (Cal. Code Regs., tit. 8, § 11050, subd. 10(C), as amended and republished by the Dept. of Industrial Relations, effective January 1, 2007 pursuant to AB 1835, Chap. 230, Stats. 2006 (subd. 10(C).) Wage Order 5 prohibits the employer from charging rent in excess of this value where the apartment is provided as a condition of employment. (Cal. Code Regs., tit. 8, § 11050, subd. 10(E).)[1]

Here, Von Nothdurft's management agreement provides:

"4. Manager shall be compensated as follows[:]

"a) Free rent of a 3-bedroom apartment during the term as manager. The initial value of this compensation is $955 per month.

"b) $100 per month toward utility expenses.

"c) One telephone line costs, less any personal long distance charges.

"d) Internet high speed connection."

Von Nothdurft argues this provision does not satisfy the legal requirements to credit rent towards minimum wage as a matter of law because it does not mention minimum wage, does not provide for recording of hours worked, and purports to value the lodgings in an amount in excess of the maximum allowed by the wage order. Von

---

[1] These provisions of Wage Order 5 are to be read alongside Labor Code section 1182.8, which provides: "No employer shall be in violation of any provision of any applicable order of the Industrial Welfare Commission relating to credit or charges for lodging for charging, pursuant to a voluntary written agreement, a resident apartment manager up to two-thirds of the fair market rental value of the apartment supplied to the manager, if no credit for the apartment is used to meet the employer's minimum wage obligation to the manager." (See *Brock v. Carrion, Ltd.* (E.D.Cal. 2004) 332 F.Supp.2d 1320, 1328 (*Brock*).) "[S]ection 1182.8 governs where an employer does *not* credit lodging against minimum wages, and Wage Order No. 5 applies when an employer does seek to impose such a credit." (*Brock*, *supra*, 332 F.Supp.2d at p. 1328.) Since the employment agreement here included free rent as part of Von Nothdurft's compensation, she is subject to the crediting provision of Wage Order 5, not the limitation on rental charges for managers under Labor Code section 1182.8.

Nothdurft also asserts the agreement is unenforceable because it is unconscionable and an adhesion contract.

Wage and hour claims are governed by "two complementary and occasionally overlapping sources of authority: the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the IWC." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026 (*Brinker*).) "We apply the usual rules of statutory interpretation to the Labor Code, beginning with and focusing on the text as the best indicator of legislative purpose." (*Ibid.*) "In turn, the IWC's wage orders are entitled to 'extraordinary deference, both in upholding their validity and in enforcing their specific terms.' (*Martinez v. Combs* [(2010)] 49 Cal.4th [35,] 61.) When a wage order's validity and application are conceded and the question is only one of interpretation, the usual rules of statutory interpretation apply." (*Brinker*, *supra*, 53 Cal.4th at p. 1027; see also *California State Restaurant Assn. v. Whitlow* (1976) 58 Cal.App.3d 340, 344 (*Whitlow*).) The provisions of both the Labor Code and the wage orders are to be liberally construed with an eye to promoting employee protections, and must be interpreted in the manner that best effectuates that protective intent. (*Brinker*, *supra*, 53 Cal.4th at pp. 1026-1027.)

"'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law.' [Citation.] To determine the intent, the court turns first to the words, attempting to give effect to the usual, ordinary import of the language and to avoid making any language mere surplusage. [Citations.] When the language is clear, we must apply that language without further interpretation. [Citation.] 'If there is no ambiguity in the language of the statute, "'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.'"'" (*Singh v. Superior Court* (2006) 140 Cal.App.4th 387, 392 (*Singh*).)

Wage Order 5 does not define the phrase "voluntary written agreement" as used in subdivision 10(C) or otherwise specify that any particular terms must be included in such

an agreement to permit a valid lodging credit – it requires only a "voluntary written agreement between the employer and the employee" without qualification. Under its plain terms, no express reference to a credit toward minimum wage, statement that the employee is entitled to minimum wage for every hour worked, or the precise amount to be credited, need be included as long as the parties understand and agree – as they did here by entering into the management agreement – that lodging is to be credited toward the employee's compensation. Since the wage order's language is clear, we apply it without further interpretation.

Despite the plain language of subdivision 10(C), Von Nothdurft urges us to read requirements into the subdivision that are not there or that are not supported by law, citing to extrinsic aids such as the policies behind the wage orders. It is only where regulatory language is ambiguous and susceptible of more than one reasonable meaning, however, that we consider "'extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.'" (*Singh*, *supra*, 140 Cal.App.4th at p. 393.) Subdivision 10(C) is not ambiguous and Von Nothdurft admits as much, stating in her reply brief that she "does not seek to have the Court declare [subdivision] 10(C) to be ambiguous." Accordingly, we do not resort to extrinsic aids in our analysis.

Von Nothdurft next asserts that, in interpreting subdivision 10(C), we should look to a January 29, 1992 opinion letter from the Division of Labor Standards Enforcement (DLSE), which responded to an inquiry regarding the requirements for an "explicit wage agreement" under California law.[2] As one appellate court explained such agreements,

---

[2] "The DLSE is the state agency empowered to enforce California's wage and hour laws, including IWC wage orders." (*Gonzalez v. Downtown LA Motors* (2013) 215 Cal.App.4th 36, 46 fn. 4.)

generally "a fixed salary for an irregular workweek does not compensate an employee for statutory overtime work unless the parties have entered into an explicit, mutual wage agreement. [Citations.] The exception to that general rule requires an agreement which specifies the basic hourly rate of compensation upon which the guaranteed salary is based before the work is performed, and the employee must be paid at least one and one-half time the agreed-upon rate for hours in excess of forty." (*Ghory v. Al-Lahham* (1989) 209 Cal.App.3d 1487, 1491 (*Ghory*).)[3]

Von Nothdurft contends that, like explicit wage agreements, her agreement was required to set forth the specifics of her compensation, namely the relationship between the lodging credit, actual hours worked and the minimum wage. But explicit wage agreements have no bearing on the interpretation of subdivision 10(C), which does not include any such requirement in order for the employer to take a lodging credit against the employee's compensation. Instead, all that is required is that the employer and employee voluntarily agree to credit lodging against the employee's wages. For this reason, her reliance on cases involving explicit wage agreements, such as *Hernandez v. Mendoza* (1988) 199 Cal.App.3d 721 and *Ghory*, *supra*, 209 Cal.App.3d 1487, is misplaced.

Von Nothdurft asserts that without more specificity in the "voluntary written agreement between the employer and employee," the employee is not put on notice of the facts that (1) the employee is entitled to be paid minimum wage, (2) in fulfilling the employer's duty to be paid minimum wage, a credit is being taken for providing an apartment, and (3) the credit is in an amount legally permitted by the wage order. Von Nothdurft reasons that any other interpretation does not promote the protection and benefit of employees. But we cannot add to subdivision 10(C) requirements that are not

---

[3] As Steck notes, the Legislature amended Labor Code section 515 in 2012 to effectively prohibit such agreements. (Stats. 2012, ch. 820, § 2 (AB 2103).)

8.

there.  (See *Wells Fargo Bank v. Superior Court* (1991) 53 Cal.3d 1082, 1097 ["a statute '. . . is to be interpreted by the language in which it is written, and courts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions.'"]; Code Civ. Proc., § 1858 ["[i]n the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; . . ."].)

Von Nothdurft next contends the management agreement is an unconscionable and illegal contract of adhesion.  She asserts the agreement is unconscionable because it (1) contains a "blatantly illegal term" in the form of the statement that her compensation would be the value of her apartment, $955, which the trial court impermissibly rewrote when it allowed Steck to take a rental credit of $451.89 per month, and (2) she was illegally required to "purchase her apartment at the rate of $955 per month . . . instead of receiving her wages on an hourly basis[,]" in violation of Labor Code section 450, subdivision (a).

Steck responds that Von Nothdurft is precluded from raising these issues because they were not identified in the settled statement.  When oral proceedings are not reported or cannot be transcribed, an appellant may proceed by way of a settled statement in lieu of a reporter's transcript.  (Cal. Rules of Court, rule 8.137(a).)[4]  To do so, the appellant must file a motion in superior court to use a settled statement and, if the motion is granted, must serve and file in the superior court "a condensed narrative of the oral proceedings that the appellant believes necessary for the appeal. . . ."  (Rule 8.137(b)(1).) "If the condensed narrative describes less than all the testimony, the appellant must state the points to be raised on appeal; the appeal is then limited to those points unless, on motion, the reviewing court permits otherwise."  (Rule 8.137(b)(2).)

---

[4] Subsequent references to Rules are to the California Rules of Court.

Stating the points to be raised on appeal enables the respondent to determine whether additional portions of the oral proceedings should be included in the settled statement. (See *Ermoian v. Desert Hosp.* (2007) 152 Cal.App.4th 475, 497 [discussing former Rule 4, now Rule 8.130(a)(2), which provides that if an appellant lists less than all of the testimony in his or her notice designating the reporter's transcript, the notice must state the points to be raised on appeal and the appeal is limited to those points].) Failure to include issues in the settled statement precludes the appellant from raising them on appeal. (*Marogna v. Mitchell* (1951) 104 Cal.App.2d 799, 805-806.)

Here, the settled statement specifically identifies the one issue Von Nothdurft would raise on appeal, namely whether the "written agreement between the parties satisf[ies] the requirements of Wage Order 5-2001 (as amended) Paragraph 10, sufficiently to permit . . . Steck to take a credit of $451.89 per month against . . .Von No[]thdurft's right to receive a minimum wage?" Thus, this appeal is limited to the determination of whether the agreement satisfies the requirements of subdivision 10 of Wage Order 5. Nothing in the statement implies or suggests the issues to be presented on appeal would include a challenge to the validity of the entire agreement based on unconscionability or adhesion.

In reply, Von Nothdurft asserts that the issues of unconscionability and adhesion are encompassed within the stated issue. She reasons that since the issue before us is whether the written agreement satisfies the requirements of subdivision 10, which requires a "voluntary written agreement," she can show that the agreement was not "voluntary" if she can demonstrate it is unconscionable or an adhesion contract. Whether a contract is voluntarily entered into and whether it is adhesive or unconscionable, however, are two separate issues. Unconscionability provides a basis for refusing to enforce a contract which the court finds, as a matter of law, to have been unconscionable when it was made. (Code Civ. Proc., § 1670.5, subd. (a).) It does not determine whether

10.

an agreement was voluntary. Here, the trial court specifically found that "[b]oth parties signed the agreement voluntarily without coercion."

Even were we to consider the issue, it fails for the simple reason that the management agreement is not procedurally unconscionable. Unconscionability consists of both procedural and substantive elements; the procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression and surprise due to unequal bargaining power, while the substantive element pertains to the fairness of the agreement's actual terms. (*Pinnacle Museum Toward Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle*).) Both elements must be shown, but they need not be present to the same degree and are evaluated on a sliding scale. (*Id.* at p. 247.)

With respect to procedural unconscionability, ""[o]ppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form."" (*Pinnacle, supra*, 55 Cal.4th at p. 247.) "Procedural unconscionability, and in particular '"oppression,"' generally entails a *contract of adhesion*; that is, '"a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it."' [Citations.] '"[S]urprise"' typically involves a provision ""hidden"" within the prolixity of a preprinted form contract drafted by the party having superior bargaining strength." (*McCaffrey Group, Inc. v. Superior Court* (2014) 224 Cal.App.4th 1330, 1349.)

There is no evidence before us to show that the agreement is procedurally unconscionable. There is no evidence of surprise or misrepresentation, or that the management agreement was a contract of adhesion. The agreement was not a preprinted form contract, the allegedly unconscionable provision was not hidden, and the agreement was not presented on a take-it-or-leave-it basis. Instead, Steck gave Von Nothdurft the opportunity to make changes, yet she did not do so. Although Von Nothdurft testified

11.

she "felt" she had no alternative but to accept the terms offered to get the job, there is no evidence to show the basis for her feelings or that she had no meaningful choice but to agree to the compensation provision. Since there is no evidence of oppression or surprise, Von Nothdurft failed to show procedural unconscionability and her claim fails.

In sum, we hold that the management agreement satisfies the requirements of subdivision 10(C) of Wage Order 5, as the parties entered into a voluntary written agreement to credit the free rent against her compensation. Accordingly, Steck is entitled to take a rental credit of $451.89 per month against Von Nothdurft's right to receive minimum wage.

### DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to Steck.


_____
Gomes, J.

WE CONCUR:


_____
Cornell, Acting P.J.


_____
Poochigian, J.

12.