Filed 3/12/20

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| GERALD LANGE, | B294091 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC697115) |
| v. | |
| MONSTER ENERGY COMPANY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Teresa A. Beaudet, Judge. Affirmed.

Shook, Hardy & Bacon, Frank C. Rothrock, Laura M. Booth, and Victoria P. McLaughlin for Defendant and Appellant.

Berenji Law Firm, Shadie L. Berenji, and Brittanee A. Marksbury for Plaintiff and Respondent.

_____

Monster Energy Company appeals from a trial court order denying its motion to compel arbitration. The trial court concluded that the parties' arbitration agreement was so permeated with unconscionability that it could not remove the unconscionability merely by severing. The trial court based that conclusion on two independent grounds: that the existence of more than one unconscionable provision in the arbitration agreement precluded severance, and that merely severing provisions would not eliminate the unconscionability. We disagree with the trial court's conclusion that the existence of more than one unconscionable provision precludes severance. But Monster did not address the trial court's alternative basis for its order. We have undertaken an independent unconscionability analysis and we reach the same conclusion the trial court reached. We affirm.

## BACKGROUND

Monster hired Gerald Lange as a Monster Ambassador in October 2006. When he was hired, Lange signed an employment agreement that contained the following arbitration clause:

"4.    Arbitration of Disputes/Litigation

"4.1   Any controversy or claim arising out of or relating to this Agreement or the breach thereof or any agreement entered into between the Company and you or otherwise arising out of your employment or the termination of that employment (including without implication of limitation any claims of unlawful employment discrimination whether based on age or otherwise) defamation, invasion of privacy, infliction of emotional distress, unlawful harassment, including similar claims such as, without limitation, claims arising under the California Fair Employment and Housing Act [(FEHA)], the

2

Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the California Labor Code and Equal Pay Act, the Rehabilitation Act of 1974, the Employee Retirement Income and Security Act and any and all other contractual, tort, legal, equitable and statutory claims that may be lawfully submitted to arbitration, either by or against the Company shall, to the fullest extent permitted by law, be settled by binding arbitration conducted by JAMs/Endispute ('JAMS') in accordance with JAMS Comprehensive Arbitration Rules and Procedures (the 'Rules') applicable to employment disputes, in Orange County, California. Except as expressly allowed by the Statutory Claims as defined below, the arbitrator shall have no authority to award punitive or exemplary damages or any other amount for the purpose of imposing a penalty. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction.

"4.2 For any claims brought under [FEHA], Title VII of the Civil Rights Act of 1964, or any other local, state or federal statu[t]es ('Statutory Claims') (a) the substantive and remedial provisions applicable to the Statutory Claims shall be available to any party required to arbitrate Statutory Claims under this Agreement; (b) if the Rules do not already provide, either party submitting a Statutory Claim to arbitration shall be entitled to the full range of discovery provided under California Code of Civil Procedure section 1283.05; (c) you shall not be required to pay unreasonable costs or any of the arbitrator's fees or expenses; and (d) the arbitrator must also issue a written award setting forth the essential findings and conclusions on which the award is based.

3

"4.3    Notwithstanding the forgoing, these provisions shall not preclude either party from pursuing a court action for the sole purpose of obtaining a temporary restraining order or a preliminary injunction in circumstances in which such relief is appropriate, provided that any other relief shall be pursued through an arbitration proceeding pursuant to this Agreement.

"4.4    Without in any way detracting from the intent and obligation of the Company and you to arbitrate all disputes and controversies between them in accordance with the above provisions, in the event that any controversy or claim is determined in a court of law, both you and the Company hereby irrevocably waive any and all rights to trial by jury in any legal proceeding arising out of or relating to this Agreement, the breach thereof or the employee's employment or other business relationship.  Except as otherwise required by law, both you and the Company hereby specifically waive any claims for punitive or exemplary damages or for any other amounts awarded for the purposes of imposing a penalty.

"MAKE SURE THAT YOU HAVE READ AND UNDERSTAND THE FOREGOING.  YOU AGREE TO WAIVE THE RIGHT TO A JURY AND TO SUBMIT DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT OR YOUR EMPLOYMENT TO NEUTRAL, BINDING ARBITRATION."

Lange initialed in a designated space next to the last paragraph.

The employment agreement's paragraph 3 provided that "all the terms and conditions contained in the Employee Proprietary Information, Confidentiality, Intellectual Property and Non-Solicitation Agreement [(PIA)] attached [to the

employment agreement] are incorporated herein . . . ." The PIA contained the following clause:

"14. **Equitable Remedies**. Employee acknowledges that irreparable injury will result to Company from Employee's violation of any of the terms of this Agreement. Employee expressly agrees that Company shall be entitled, in addition to damages and any other remedies provided by law, to an injunction or other equitable remedy respecting such violation or continued violation, without the necessity of a bond or similar undertaking. Employee agrees to submit himself or herself to the jurisdiction of the Courts of the State of California, County of San Diego, in any proceeding to enforce the terms of this Agreement."

On November 14, 2017, Monster terminated Lange.

On March 7, 2018, Lange sued Monster alleging causes of action for disability discrimination under FEHA, failure to engage in the interactive process, failure to provide reasonable accommodations, failure to prevent discrimination, and wrongful termination in violation of public policy. In response, Monster filed a motion to compel arbitration. The trial court heard argument on Monster's motion on July 11, 2018. At the July 11 hearing, the trial court requested supplemental briefing from the parties on two issues, one of which was "whether the problematic aspects of the arbitration agreement (punitive damages, costs, and the Proprietary Information Agreement) can or should be severed." The trial court again heard argument on November 7, 2018 and denied Monster's motion to compel arbitration.

In its order denying the motion to compel arbitration, the trial court concluded that the arbitration agreement contained a low level of procedural unconscionability. The trial court concluded that the arbitration agreement's provision "requiring

[Lange] to waive punitive damages as a remedy for all nonstatutory claims" was substantively unconscionable.  The trial court also concluded that the PIA's "Equitable Remedies" section made the arbitration agreement one that "carves out claims arising out of a confidentiality agreement," and that such an agreement "can be considered substantively unconscionable."

The trial court concluded that the unconscionable provisions could not be severed from the parties' contract.  The trial court wrote:  "Finally, with regard to the severability of any of the above provisions, [Lange] contends that the [employment] agreement is so permeated with unconscionability that severability would not be appropriate.  The [trial court] finds that there are two terms that are substantively unconscionable.  The first is the provision requiring [Lange] to waive punitive damages as a remedy for all nonstatutory claims; the second is the provision excepting from arbitration claims to enforce the [PIA].

"Severance is inappropriate when the arbitration agreement contains 'more than one unlawful provision' and when 'there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement.' [Citation.]  In the instant case, there is more than one unlawful provision. . . .

"In light of the existence of two substantively unconscionable provisions and the inability to address the [PIA] issues by simply carving out a clause (i.e., paragraph 3 of the letter agreement is separate from the arbitration provision in paragraph 4 of the letter agreement, and the parties did separately enter into that agreement, thereby precluding a carveout that would purportedly eliminate the unconscionability),

6

the [trial court] finds that the arbitration agreement is permeated with a high degree of substantive unconscionability."

Monster filed a timely notice of appeal.

## DISCUSSION

"California law . . . favors enforcement of valid arbitration agreements." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97 (*Armendariz*).) "[U]nder California law . . . , an arbitration agreement may only be invalidated for the same reasons as other contracts." (*Id.* at p. 98; Code Civ. Proc., § 1281.) Unconscionability in a contract is one reason a court may decline enforcement. (See *Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257, 1265 (*Farrar*).)

"The rules governing the role of the court in interpreting a written instrument are well established. The interpretation of a contract is a judicial function. [Citation.] In engaging in this function, the trial court 'give[s] effect to the mutual intention of the parties as it existed' at the time the contract was executed. [Citation.] Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms." (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1125-1126.) "When the contract has been 'reduced to writing,' the parties' intention 'is to be ascertained from the writing alone, if possible,' subject to other rules of interpretation." (*Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1028.)

A.     Unconscionability

"Unconscionability is ultimately a question of law, which we review de novo when no meaningful factual disputes exist as to the evidence." (*Chin v. Advanced Fresh Concepts Franchise Corp.* (2011) 194 Cal.App.4th 704, 708; *Pinnacle Museum Tower*

7

*Assn. v. Pinnacle Market Development (US), LLC* (2012) 55
Cal.4th 223, 236.)

" '[U]nconscionability has both a "procedural" and a
"substantive" element,' the former focusing on ' "oppression" ' or
' "surprise" ' due to unequal bargaining power, the latter on
' "overly harsh" ' or ' "one-sided" ' results.  [Citation.]  'The
prevailing view is that [procedural and substantive
unconscionability] must *both* be present in order for a court to
exercise its discretion to refuse to enforce a contract or clause
under the doctrine of unconscionability.'  [Citation.]  But they
need not be present in the same degree.  'Essentially a sliding
scale is invoked which disregards the regularity of the procedural
process of the contract formation, that creates the terms, in
proportion to the greater harshness or unreasonableness of the
substantive terms themselves.'  [Citations.]  In other words, the
more substantively oppressive the contract term, the less
evidence of procedural unconscionability is required to come to
the conclusion that the term is unenforceable, and vice versa."
(*Armendariz*, *supra*, 24 Cal.4th at p. 114.)

1.  Procedural Unconscionability

" '[A] finding of procedural unconscionability does not mean
that a contract will not be enforced, but rather that courts will
scrutinize the substantive terms of the contract to ensure they
are not manifestly unfair or one-sided.  [Citation.] . . . [T]here are
degrees of procedural unconscionability.  At one end of the
spectrum are contracts that have been freely negotiated by
roughly equal parties, in which there is no procedural
unconscionability. . . .  Contracts of adhesion that involve
surprise or other sharp practices lie on the other end of the
spectrum.  [Citation.]  Ordinary contracts of adhesion, although

8

they are indispensable facts of modern life that are generally enforced [citation], contain a degree of procedural unconscionability even without any notable surprises, and "bear within them the clear danger of oppression and overreaching." ' " (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1244 (*Baltazar*).)

The trial court concluded that the arbitration agreement, which was contained in an offer letter from Monster to Lange that became Lange's employment agreement with his signature, represented a low level of procedural unconscionability. Lange raised the same contentions in the trial court as here. He contends here that the agreement represents a moderate (rather than low) level of procedural unconscionability for the three reasons he restates from his trial court arguments: (1) the arbitration agreement is an adhesion contract; (2) the arbitration agreement was inconspicuous; and (3) Monster failed to attach or otherwise include the governing arbitration rules.

We reach the same conclusion the trial court reached. The arbitration agreement constitutes a little more than a third of the entire three and a quarter page employment agreement. It is an adhesive contract, as are most employment agreements; "few employees are in a position to refuse a job because of an arbitration agreement." (*Armendariz*, *supra*, 24 Cal.4th at p. 115.) But the arbitration agreement was conspicuous. Arbitration commanded a more significant amount of space in the short employment agreement than did any other subject. And Lange placed his initials at the end of a double-spaced, all capital-letter paragraph that stated: "MAKE SURE THAT YOU HAVE READ AND UNDERSTAND THE FOREGOING. YOU AGREE TO WAIVE THE RIGHT TO A JURY AND TO SUBMIT

9

DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT OR YOUR EMPLOYMENT TO NEUTRAL, BINDING ARBITRATION."

Lange has also failed to persuade us that the agreement is made more procedurally unconscionable by Monster's failure to attach the "JAMS Comprehensive Arbitration Rules and Procedures" referenced in the arbitration agreement. Addressing a very similar argument, the Supreme Court in *Baltazar* said, "Baltazar's argument . . . might have force if her unconscionability challenge concerned some element of the . . . rules of which she had been unaware when she signed the arbitration agreement. But her challenge to the enforcement of the agreement has nothing to do with the . . . rules; her challenge concerns only matters that were clearly delineated in the agreement she signed. Forever 21's failure to attach the . . . rules therefore does not affect our consideration of Baltazar's claims of substantive unconscionability." (*Baltazar*, *supra*, 62 Cal.4th at p. 1246.) While Lange's arguments in the trial court discussed JAMS rules that he contended were substantively unconscionable, those contentions were not briefed here. Because none of Lange's substantive unconscionability arguments here has anything to do with the JAMS rules applicable to the parties' dispute, we agree that Monster's failure to attach those rules does not bear on the arbitration agreement's procedural unconscionability.

Lange cannot reasonably argue that he was surprised by the existence of an arbitration agreement or its terms. Monster made no attempt to hide the arbitration agreement, and Lange indicated with his initials that he had read and understood the arbitration agreement. The agreement was adhesive, but

represents no surprise and no more than the low level of procedural unconscionability contained in any employment agreement for an employee not in a "position to refuse a job because of an arbitration agreement." (*Armendariz, supra*, 24 Cal.4th at p. 115.)

2. Substantive Unconscionability

While procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression and surprise due to unequal bargaining power," substantive unconscionability "pertains to the fairness of the agreement's actual terms." (*Von Nothdurft v. Steck* (2014) 227 Cal.App.4th 524, 535.) "Cases have talked [of substantive unconscionability] in terms of 'overly harsh' or 'one-sided' results. [Citations.] One commentator has pointed out, however, that '. . . unconscionability turns not only on a "one-sided" result, but also on an absence of "justification" for it[ ]' [citation], which is only to say that substantive unconscionability must be evaluated as of the time the contract was made. [Citation.] The most detailed and specific commentaries observe that a contract is largely an allocation of risks between the parties, and therefore that a contractual term is substantively suspect if it reallocates the risks of the bargain in an objectively unreasonable or unexpected manner." (*A & M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 487.)

Our Supreme Court considered substantive unconscionability in detail in *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1145. "The unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as ' " 'overly harsh' " ' [citation], ' "unduly oppressive" ' [citation], ' "so one-

11

sided as to 'shock the conscience' " ' [citation], or 'unfairly one-sided' [citation].  All of these formulations point to the central idea that unconscionability doctrine is concerned not with 'a simple old-fashioned bad bargain' [citation], but with terms that are 'unreasonably favorable to the more powerful party' [citation].  These include 'terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms, or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction.' [Citation.]" (*Ibid.*; also *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 910-911.)

Lange contends that the arbitration agreement is substantively unconscionable in five ways.  We address them in turn.

a.  Punitive Damages Waiver

The arbitration agreement states:  "Except as expressly allowed by the Statutory Claims as defined below, the arbitrator shall have no authority to award punitive or exemplary damages or any other amount for the purpose of imposing a penalty."  In another section—facially applicable only "in the event that any controversy or claim is determined in a court of law"—the agreement provides:  "Except as otherwise required by law, both you and the Company hereby specifically waive any claims for punitive or exemplary damages or for any other amounts awarded for the purposes of imposing a penalty."  Lange

contends—and the trial court agreed—that the agreement's punitive damages waiver is substantively unconscionable.

As the trial court explained, "the provision requiring [Lange] to waive punitive damages as a remedy for all nonstatutory claims is substantively unconscionable" because an employee "seeking to arbitrate a *Tameny* claim should have the benefit of . . . 'the availability of damages remedies equal to those available in a *Tameny* suit brought in court, including punitive damages . . . .'"[1] (Quoting *Little v. Auto Stiegler, Inc.*, *supra*, 29 Cal.4th at p. 1081.) The waiver of punitive damages as a remedy for all nonstatutory claims, then, is substantively unconscionable regardless of its mutuality.[2]

  b. PIA Equitable Remedies Clause

Three of Lange's substantive unconscionability arguments stem from the Equitable Remedies Clause in the PIA. The employment agreement's paragraph 3 incorporates "all the terms

---

[1] "In *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 178 . . . , [the Supreme Court] recognized that although employers have the power to terminate employees at will, they may not terminate an employee for a reason that is contrary to public policy." (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1076.) A *Tameny* claim is a nonstatutory claim for wrongful termination in violation of public policy.

[2] Monster contends that the words "[e]xcept as otherwise required by law" in the second punitive damages waiver—the one implicated only "in the event that any controversy or claim is determined in a court of law," saves the *first* punitive damages waiver from an unconscionability finding. Monster has not forcefully asserted the argument here, and we do not analyze it other than to say the argument is not supported by the contractual language.

13

and conditions contained in the" PIA into the employment agreement. The PIA's Equitable Remedies clause states: "Employee acknowledges that irreparable injury will result to Company from Employee's violation of any of the terms of this Agreement. Employee expressly agrees that Company shall be entitled, in addition to damages and any other remedies provided by law, to an injunction or other equitable remedy respecting such violation or continued violation, without the necessity of a bond or similar undertaking. Employee agrees to submit himself or herself to the jurisdiction of the Courts of the State of California, County of San Diego, in any proceeding to enforce the terms of this Agreement." Lange asserts that the entire provision constitutes an unconscionable one-sided carveout, that the waiver of a showing of irreparable injury is unconscionable, and that the waiver of an injunction bond or undertaking is unconscionable.

### i.     One-Sided Carveout

Lange first contends that the Equitable Remedies clause constitutes a one-sided carveout provision that renders the arbitration agreement essentially illusory as to Monster. Monster counters that incorporation of the PIA into the employment agreement subjects the PIA to the arbitration agreement.

"Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." (Civ. Code, § 1642.) The PIA contains no arbitration provision. The arbitration agreement, on the other hand, does provide in paragraph 4.3 for "a court action for the sole purpose of obtaining a temporary restraining order or a preliminary injunction in circumstances in which such relief is appropriate, provided that any other relief

14

shall be pursued through an arbitration proceeding pursuant to this Agreement." The two equitable remedies clauses—the arbitration agreement's paragraph 4.3 and the PIA's Equitable Remedies clause—are not mutually exclusive. Nor is the arbitration agreement's equitable remedies provision one-sided; it expressly allows "either party" to seek a temporary restraining order or preliminary injunction in court "in circumstances in which such relief is appropriate." The PIA's Equitable Remedies clause does no more than express a set of circumstances under which equitable relief may be appropriate and create procedural delimitations applicable exclusively in those circumstances.

On its face, the PIA's Equitable Remedies clause does not apply broadly to every dispute the parties may encounter, nor does it modify the terms of the employment agreement or its arbitration agreement. It applies only internally to the PIA, and even then its entire function is to define rights and responsibilities between the parties should they litigate issues covered by the PIA.

While the PIA's Equitable Remedies clause lacks mutuality, the "reasonable justification for this lack of mutuality" is evident on the face of the PIA. The PIA was created for the purpose of protecting Monster's "confidential and proprietary information." In the PIA, Lange acknowledged that Monster "enjoys a competitive advantage as a result of its compilation, possession[,] and use of the Proprietary Information, and that [Monster] would suffer competitive harm if the Proprietary Information became known to others outside the Company."

In *Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1536, the court explained that "a contract can provide a 'margin of safety' that provides the party with superior bargaining

15

strength a type of extra protection for which it has a legitimate commercial need without being unconscionable." In its entirety, the PIA is a "margin of safety" for Monster against the possibility that employees will purloin proprietary information and use it against the company. That the PIA contains an equitable remedies provision does not release the PIA from the force of the parties' arbitration agreement. And that the PIA's equitable remedies provision is not inconsistent with the employment agreement's equitable remedies provision reinforces that the two may be read in harmony.

Lange also asserts that the Equitable Remedies clause's reference to damages renders it unconscionable; Lange reads the clause to allow Monster damages where Lange would not be so entitled. We disagree with Lange's interpretation. The sentence Lange challenges states: "Employee expressly agrees that Company shall be entitled, in addition to damages and any other remedies provided by law, to an injunction or other equitable remedy respecting such violation or continued violation, without the necessity of a bond or similar undertaking." We address the remainder of the sentence below, but note that the reference to "damages" in the Equitable Remedies clause is a general reference to other remedies to which Monster may be entitled, and not an investiture of remedies not otherwise available. In context, the clause's reference to damages does not itself create unconscionability.

We will not find the PIA's Equitable Remedies clause substantively unconscionable based on a lack of mutuality; the PIA is itself a "margin of safety" for which Monster has a legitimate commercial need. (See *Stirlen*, *supra*, 15 Cal.App.4th

at p. 1536.)  The clause is, however, unconscionable for other reasons we discuss below.

        ii.      Waiver of Injunction Bond & Assumption of Irreparable Injury

Lange contends that injunctive relief provisions that waive a bond and waive the requirement that a party show irreparable harm are substantively unconscionable.  Monster argues that these are merely provisions which provide Monster with a commercially justifiable "margin of safety."  We agree with Lange.

"An arbitration provision lacks mutuality and is substantively unconscionable when it authorizes the stronger party to obtain injunctive relief without establishing all of the essential elements for the issuance of an injunction." (*Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 250.)  As we have explained, the PIA is, in its entirety, a "margin of safety" for Monster, and for which it has a legitimate commercial need.  But Monster has articulated—and we can discern—no legitimate commercial need for the specific provisions in the PIA granting it predispute relief from having to "establish[ ] all of the essential elements for the issuance of an injunction." (*Ibid.*)

      c.  Jury Trial Waiver

The parties' arbitration agreement contains the following language in paragraph 4.4:  "Without in any way detracting from the intent and obligation of the Company and you to arbitrate all disputes and controversies between them in accordance with the above provisions, in the event that any controversy or claim is determined in a court of law, both you and the Company hereby irrevocably waive any and all rights to trial by jury in any legal proceeding arising out of or relating to this Agreement, the

17

breach thereof or the employee's employment or other business relationship. Except as otherwise required by law, both you and the Company hereby specifically waive any claims for punitive or exemplary damages or for any other amounts awarded for the purposes of imposing a penalty." Lange put his initials next to the next paragraph, which states in part in all capital letters, "YOU AGREE TO WAIVE THE RIGHT TO A JURY AND TO SUBMIT DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT OR YOUR EMPLOYMENT TO NEUTRAL, BINDING ARBITRATION."

Lange contends that the agreement's jury trial waiver is substantively unconscionable. Monster responds that the jury waiver was an inherent component of the parties' agreement to resolve disputes through arbitration and is, therefore, not unconscionable.

Lange and Monster are not arguing about the same jury trial waiver. While Monster refers to a jury trial waiver inherent in arbitration agreements, Lange's argument is focused on the jury trial waiver preceded by the words "in the event that any controversy or claim is determined in a court of law." And *that* jury trial waiver is not susceptible to any interpretation *other* than as an unconscionable predispute jury trial waiver. (See *Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944, 961.)

## B. Severance of Unconscionable Provisions

As the trial court did, we have found substantive unconscionability in the parties' arbitration agreement and related provisions. Civil Code section 1670.5, subdivision (a) states that "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or

18

it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."[3] The Supreme Court has interpreted this provision to mean that if a trial court concludes that an arbitration agreement contains unconscionable terms, it then "must determine whether these terms should be severed, or whether instead the arbitration agreement as a whole should be invalidated." (*Gentry v. Superior Court* (2007) 42 Cal.4th 443, 472-473, abrogated on other grounds as recognized in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 360.) "[T]he strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement: Although 'the statute appears to give a trial court discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement[,] . . . it also appears to contemplate the latter course only when an agreement is "permeated" by unconscionability.'" (*Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1477-1478, quoting *Armendariz, supra*, 24 Cal.4th at p. 122; *Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 986.)

---

[3] The Legislative Committee Comments to Civil Code section 1670.5 state: "Under this section the court, in its discretion, may refuse to enforce the contract as a whole if it is permeated by the unconscionability, or it may strike any single clause *or group of clauses* which are so tainted or which are contrary to the essential purpose of the agreement, or it may simply limit unconscionable *clauses* so as to avoid unconscionable results." (Legis. Com., com. on Assem. Bill No. 510 (1979-1980 Reg. Sess.) reprinted at 8 West's Ann. Civ. Code (2011 ed.) foll. § 1670.5, p. 75, italics added.)

We review a trial court's order declining to sever the unconscionable provisions from an arbitration agreement for abuse of discretion. (See *Armendariz*, *supra*, 24 Cal.4th at p. 124.) "All exercises of discretion must be guided by applicable legal principles, however, which are derived from the statute under which discretion is conferred. [Citation.] If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law. [Citation.] Therefore, a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal." (*Farmers Ins. Exchange v. Superior Court* (2013) 218 Cal.App.4th 96, 106.)

The major premise of Monster's primary contention on appeal is that the trial court concluded that because the parties' agreement contains more than a single unconscionable provision, it had no discretion to sever those provisions. Monster argues that this is an incorrect legal standard the trial court relied on to reach its discretionary determination that the parties' arbitration agreement was permeated by unconscionability.

Citing *Farrar*, the trial court here stated that "[s]everance is inappropriate when the arbitration agreement contains 'more than one unlawful provision' and when 'there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement.' " The trial court's statements at the July 11, 2018 hearing on Monster's motion further clarify its understanding. The trial court said, "the court did address the notion of severance, but unfortunately you've got more than one problem here. And *under the current*

20

*interpretations, we're not really allowed to start reforming the whole document when it requires more than one change.*" (Italics added.) Later at that same hearing, the trial court said, "you know, the way I came out in the end on the [unconscionability of the PIA clause], if this was the only problem, I think we could sever it based on the arguments you made . . . . But, like I said before, the problem is you've got too many items to sever here."

No authority supports the trial court's conclusion that any more than a single unconscionable provision in an arbitration agreement *precludes* severance.[4] "An arbitration agreement *can* be considered permeated by unconscionability if it 'contains more than one unlawful provision . . . .'" (*Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 398, italics added, disapproved of on other grounds by *Baltazar*, *supra*, 62 Cal.4th at p. 1248.) That is because multiple unconscionable clauses serve as evidence of "a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Armendariz*, *supra*, 24 Cal.4th at p. 124.) But the presence of multiple unconscionable clauses is merely *one factor* in the trial court's inquiry; it is *not* dispositive. (See *ibid*.) That an agreement *can* be considered permeated by unconscionability if it

---

[4] *Farrar* does not support the proposition for which the trial court cited it. In *Farrar*, the court concluded that a single provision was unconscionable and it could be severed. There were not multiple unconscionable provisions at issue, and the court did not conclude that more than a single unconscionable provision would preclude severability. (*Farrar*, *supra*, 9 Cal.App.5th at pp. 1274-1275.)

contains more than one unlawful provision does not compel the conclusion that it *must* be so.[5]

Armendariz outlines the contours of the trial court's inquiry.  "Courts are to look to the various purposes of the contract," the Supreme Court said.  (*Armendariz, supra*, 24 Cal.4th at p. 124.)  "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced.  If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate."  (*Ibid.*)

We agree with the trial court's conclusion that it is not allowed to "start reforming the whole document . . . ."  But the trial court is not empowered to reform the parties' contract anyway (except under limited circumstances not present here).  (*Armendariz, supra*, 24 Cal.4th at p. 125; *Kolani v. Gluska* (1998) 64 Cal.App.4th 402, 407-408.)  *Armendariz* focused on whether the trial court could "strike or restrict" unconscionable provisions to "remove the unconscionable taint from the agreement."  (*Armendariz*, at pp. 124-125.)  The Supreme Court concluded that the trial court in that instance "would have to, in effect, reform the contract, *not through severance or restriction, but by augmenting it with additional terms*."  (*Ibid.*, italics added.)

---

[5] Lange cites on a variety of appellate cases wherein the presence of multiple substantively unconscionable terms have been found sufficient to support a trial court's conclusion that the contract was permeated with unconscionability.  None of those cases, however, determined that the presence of multiple substantively unconscionable terms *required* the trial court to so conclude.

22

The Ninth Circuit considered the question before us in *Poublon v. C.H. Robinson Company* (9th Cir. 2017) 846 F.3d 1251, 1273. There, as here, a party argued that "an agreement is necessarily permeated by unconscionability if more than one clause in the agreement is unconscionable or illegal." (*Ibid.*) The court responded: "We disagree; California courts have not adopted such a per se rule." (*Ibid.*) The court there noted, as we have, that the presence of more than one substantively unconscionable term "is only one of the relevant factors" in the trial court's severability inquiry. (*Ibid.*) "In each case" regarding severance, the Ninth Circuit said, "the dispositive question is whether 'the central purpose of the contract' is so tainted with illegality that there is no lawful object of the contract to enforce." (*Ibid.*) We agree.

We return, however, to the major premise of Monster's primary contention on appeal—that the trial court based its ruling *entirely* on its incorrect understanding of the law. We do not read the trial court's ruling as Monster does. The trial court appears to have based its ruling on two alternative grounds; that there was more than a single unconscionable term in the arbitration agreement *and* that one of those terms so permeated the arbitration agreement with unconscionability that the trial court could discern no reasonable means of severance that would remedy the unconscionability. While we agree with Monster that the trial court relied on an erroneous understanding of applicable law regarding the number of unconscionable provisions that may render an arbitration agreement irreparable by severance, there has been no argument here about the alternative ground for the ruling. Consequently, we cannot conclude the trial court abused its discretion when it denied Monster's motion. Indeed, we agree

with the trial court that the parties' arbitration agreement is permeated with too high a degree of unconscionability for severance to rehabilitate.

## DISPOSITION

The trial court's order is affirmed.  Lange is entitled to costs on appeal.

CERTIFIED FOR PUBLICATION

CHANEY, Acting P. J.

We concur:

BENDIX, J.

WEINGART, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.